# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEROME TUCKER, | 1:09-cv-01199-AWI-DLB (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| | [Doc. 1] |
| JAMES D. HARTLEY, Warden | |
| Respondent. | |
| _____/ | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation (CDCR) following 1990 conviction for attempted first degree murder and second degree robbery with use of a firearm. Petitioner was sentenced to seven years to life with the possibility of parole.

In the instant petition, Petitioner does not challenge the validity of his underlying conviction; rather, he challenges the Board of Parole Hearings' 2008 (Board) decision finding him unsuitable for release.

On December 2, 2009, Petitioner filed a petition for writ of habeas corpus in the Riverside County Superior Court, challenging the Board's 2008 decision. The petition was denied for failure to state a prima facie case. (Exhibits A & B, to Answer.)

1    Petitioner then filed state petitions in the California Court of Appeal and California

2    Supreme Court.  (Exhibits C & E, to Answer.)  Both petitions were summarily denied.  (Exhibits

3    D & F, to Answer.)

4    Petitioner filed the instant federal petition for writ of habeas corpus on July 2, 2009.

5    (Court Doc. 1.)  Respondent filed an answer to the petition on September 11, 2009, and

6    Petitioner filed a traverse on October 5, 2009.  (Court Docs. 15, 18.)

7                                    STATEMENT OF FACTS

8    On May 2, 1989, Petitioner and his partner entered a jewelry store in Moreno Valley.

9    Petitioner's partner held a gun to the store manager-Charles Johnson-and ordered him to get

10   down.  Mr. Johnson complied and provided keys to the jewelry display.  Petitioner then obtained

11   a handgun that was located in the jewelry store.  The two then began ransacking the store.  At

12   one point during the robbery, Petitioner's crime partner broke a display case and demanded

13   another key.  When Mr. Johnson stated that there was no other key, Petitioner said "kill him. He's

14   lying."  Petitioner made the same statement again after his partner was unable to open the cash

15   register.  In addition, Petitioner repeatedly pistol-whipped the victim to the point of

16   unconsciousness.  Petitioner then dragged the victim by his hair to the back room and began

17   interrogating him about the video surveillance.  The victim's hands were then bound behind his

18   back and his feet were bound together at the ankles with duck tape.  Petitioner was then shot

19   three times, causing him to be paralyzed from the waist down.   Petitioner and his partner fled the

20   scene.

21   (Exhibit A, to Answer, Transcript at 76-77.)

22                                       DISCUSSION

23   I.    Standard of Review

24   On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

25   1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

26   Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood,

27   114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th

28   Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy,

2

1   521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).

2   The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its

3   provisions.

4       Petitioner is in custody of the California Department of Corrections pursuant to a state

5   court judgment. Even though Petitioner is not challenging the underlying state court conviction,

6   28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the

7   threshold requirement of being in custody pursuant to a state court judgment. Sass v. California

8   Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), citing White v. Lambert, 370

9   F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a

10  state prisoner in custody pursuant to a state court judgment, even when the petition is not

11  challenging his underlying state court conviction.'").

12      The instant petition is reviewed under the provisions of the Antiterrorism and Effective

13  Death Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63,

14  70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the

15  adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable

16  application of, clearly established Federal law, as determined by the Supreme Court of the United

17  States" or "resulted in a decision that was based on an unreasonable determination of the facts in

18  light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer,

19  538 U.S. at 70-71; see Williams, 529 U.S. at 413.

20      As a threshold matter, this Court must "first decide what constitutes 'clearly established

21  Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,

22  quoting 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this

23  Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as

24  of the time of the relevant state-court decision." Id., quoting Williams, 592 U.S. at 412. "In other

25  words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or

26  principles set forth by the Supreme Court at the time the state court renders its decision." Id.

27      Finally, this Court must consider whether the state court's decision was "contrary to, or

28  involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at

3

72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 413; <u>see also</u> <u>Lockyer</u>, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." <u>Id</u>. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." <u>Id</u>. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. <u>Baylor v. Estelle</u>, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable.  <u>See</u> <u>Clark v. Murphy</u>, 331 F.3d 1062, 1069 (9th Cir.2003); <u>Duhaime v. Ducharme</u>, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. <u>Souch v. Schaivo</u>, 289 F.3d 616, 621 (9th Cir.2002), cert. denied, 537 U.S. 859 (2002), rehearing denied, 537 U.S. 1149 (2003).

In this instance, the last reasoned decision of the Riverside County Superior Court denied the petition for failure to state a prima case for relief.  (Exhibit B, to Answer.)

II.    <u>Review of Claims</u>

A parole release determination is not subject to all the due process protections of an adversary proceeding. <u>Pedro v. Oregon Parole Board</u>, 825 F.2d 1396, 1398-99 (9th Cir. 1987); <u>see</u> <u>also</u> <u>Greenholtz</u>, 442 U.S. at 12 (explaining that due process is flexible and calls for

procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." <u>Pedro</u>, 825 F.2d at 1399; <u>Jancsek v. Oregon Bd. of Parole</u>, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, <u>Pedro</u>, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," <u>Greenholtz</u>, 442 U.S. at 16; 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole," <u>Id.</u>; and 4) the decision of the Board must be supported by "some evidence" having an indicia of reliability. <u>Superintendent, Mass. Correc. Inst. v. Hill</u>, 472 U.S. 445, 455 (1985); <u>Cato v. Rushen</u>, 824 F.2d 703, 705 (9th Cir.1987).

"In <u>Superintendent v. Hill</u>, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record.' 472 U.S. 445, 454 (1985), *quoting* <u>Wolff v. McDonnell</u>, 418 U.S. 539, 558 (1974)." <u>Sass</u>, 461 F.3d at 1128. In determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. <u>Id</u>. Rather, the Court must determine whether there is any evidence in the record that could support the conclusion of the disciplinary board. <u>Id.</u>, *citing* <u>Superintendent v. Hill</u>, at 455-56. Although <u>Hill</u> involved the accumulation of good time credits, the same standard applies to parole, as both situations "directly affect the duration of the prison term." <u>Id.</u>, *citing* <u>Jancsek v. Oregon Bd. of Parole</u>, 833 F.2d at 1390.

In making a determination whether an inmate is suitable for parole, the Board is guided by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.

(b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 Cal. Code Regs. §§ 2402(a) and (b).

In this case, with regard to the procedural protections outlined in Greenholtz, Petitioner was provided all that is required. Petitioner was given advance notice of the hearing, he was offered representation by counsel at the hearing, he was granted an opportunity to submit materials for the Board's consideration and an opportunity to be heard during the hearing, and he was provided a written decision explaining the reasons why parole was denied.

The California Supreme Court clarified the standard of the review applicable to parole decisions by the Board or Governor in In re Lawrence, 44 Cal.4th 1181 (2008). The applicable standard "is whether some evidence supports the decision of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." Id. at 1212 (emphasis in original and citations omitted). As to the circumstances of the commitment offense, the Court concluded that

although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.[1]

---

[1] To this end, the Court recognized that its prior determination of "a focus upon the egregiousness of the commitment offense to the exclusion of other relevant evidence has proved in practice to obscure the core statutory emphasis upon current dangerousness, the manner in which courts apply the some evidence standard in evaluating the evidentiary value of the gravity of the commitment offense requires some clarification." In re Shaputis, 44 Cal.4th 1241, 1254 (2008) (citing Lawrence, 44 Cal.4th at 1213-1214.)

At the 2008 hearing, the Board found Petitioner unsuitable for release based on the circumstances of the commitment offense, criminal history, institutional misconduct, unstable social history, and review of confidential information. (Exhibit A, to Answer, Transcript at 97-103.)

First, the Board determined that Petitioner committed the offense in an especially heinous, atrocious or cruel manner.[2] The Board found that the offense was committed in an especially atrocious and cruel manner because it was carried out in a dispassionate and calculated manner. 15 Cal. Code Regs. § 2402(c)(1)(D).  The Board also found the motive to be very trivial in relation to the offense.  Some evidence clearly supports the Board's finding.  After entering the jewelry store, Petitioner's partner held a gun to the store manager and ordered him to get down. Mr. Johnson complied and provided keys to the jewelry display.  Petitioner then obtained a handgun that was located in the jewelry store.  The two then began ransacking the store.  At one point during the robbery, Petitioner's crime partner broke a display case and demanded another key.  When Mr. Johnson stated that there was no other key, Petitioner said "kill him. He's lying." (Exhibit A, to Answer, Transcript at 76.)  Petitioner made the same statement again after his partner was unable to open the cash register.  In addition, Petitioner repeatedly pistol-whipped the victim to the point of unconsciousness.  (Id. at 76-77.)  Petitioner then drug the victim by the hair to the back room and began interrogating him about the video surveillance.  (Id. at 77.)  The victim's hands were bound behind his back and his feet were bound together at the ankles with duck tape.  He was then shot three times which caused him to be paralyzed from the waist down. There was no evidence that the victim did anything other than comply with the requests of

---

[2]  Pursuant to Title 15, of the California Code of Regulations, Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:
    (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
    (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
    (C) The victim was abused, defiled or mutilated during or after the offense.
    (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
    (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

Petitioner and his partner; yet, Petitioner and his partner continued their brutal and senseless attack on him.  Considering that the victim was bound, beaten, and shot several times, some evidence supports the Board's finding that it demonstrated an exceptionally callous disregard for human suffering, and when considered in light of the entire record it remains indicative of Petitioner's current dangerousness.

The Board also found Petitioner's prior offenses to be an indicator of unsuitability, which included a conviction for carrying a concealed weapon. 15 Cal. Code Regs. § 2402(c)(2). Petitioner also failed to benefit from previous grants of adult probation, engaged in gang activity, and had an alcohol and drug addiction.  (Transcript at 99.)

The Board also determined that Petitioner's violent and serious misconduct during incarceration indicated he remained a current risk of danger to the community.  15 Cal. Code Regs. § 2402(c)(6). Petitioner received eight rules violation reports (CDC 115's), with most recent in 1996 for mutual combat.  (Transcript at 29-30.)  Petitioner was also cited for assault and battery on a peace officer, possession of a contraband, force and violence, possession of alcohol, and other mutual combat. The Board also noted that Petitioner had received five negative counseling chronos (CDC 128) during his incarceration. (Transcript at 30.)  Given that Petitioner's violent nature continued during his incarceration, there is some evidence to support the Board's finding that it remains indicative of his current dangerousness.

The Board also found confidential reports to be reliable and indicative of Petitioner's unsuitability for release.  Because the Court finds the other factors provide some evidence to support the Board's decision, it is not necessary to review such confidential information. See Lawrence, 44 Cal.4th at 1212 (the relevant inquiry is not whether some evidence confirms the existence of certain factual findings, but whether some evidence supports the Board's finding that inmate poses current threat to public safety).

 The Board also considered the factors in favor of suitability and commended Petitioner for receiving vocational training in machine shop and cabinetry and completion of a small business course.  15 Cal. Code Regs. § 2402(d).  He had solid parole plans and had received above average work evaluations.  He was also making an effort to attend Alcoholics Anonymous and

was a participant in the Lifer Self-Help Seminar in April and May of 2008.  However, the Board concluded, on balance, that these factors did not outweigh the factors of unsuitability.

In sum, the circumstances of Petitioner's commitment offense, prior criminal history, and institutional misconduct, in combination, support the Board's conclusion that Petitioner is a current threat to public safety if released.

Petitioner's argument that the Board's continuing reliance on the unchanging circumstances of the underlying offense violates his due process rights, is not persuasive. In <u>Biggs v. Terhune</u>, 334 F.3d 910, 916-17 (9th Cir.2003), the Ninth Circuit stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." As discussed above, however, the circumstances of the offense, while significant, were not the only reasons for the Board's decision.  Accordingly, Petitioner's claim to the contrary is without merit.

In light of the above, it cannot be said that the state court resolution of Petitioner's claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.      The petition for writ of habeas corpus be DENIED; and

2.      Judgment be entered in favor of Respondent.

This Findings and Recommendations is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served

and filed within fourteen (14) days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:    **March 1, 2010**            _____**/s/ Dennis L. Beck**_____
                                        UNITED STATES MAGISTRATE JUDGE